James Arthur **BROWN**, Appellant,

v.

**J. D. COX, Superintendent of the Virginia State Penitentiary, Appellee.**

No. 71–1089.

United States Court of Appeals, Fourth Circuit.

Oct. 4, 1972.

Daniel J. Meador, Charlottesville, Va., [Court-assigned counsel], for appellant.

Vann Lefcoe, Asst. Atty. Gen., Virginia (Andrew P. Miller, Atty. Gen., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BOREMAN, Senior Circuit Judge, and RUSSELL, Circuit Judge.

BOREMAN, Senior Circuit Judge:

James Arthur Brown (hereafter Brown or appellant) is confined in the Virginia State Penitentiary under a life sentence for robbery imposed by the Corporation Court of the City of Norfolk following a second trial in 1968. He seeks relief by way of habeas corpus, demanding his outright release from his allegedly unconstitutional confinement.

In this proceeding below the district court did not hold a hearing and, accordingly, the record consists only of the habeas corpus petition, a petition for a writ of error filed previously by Brown in the Virginia Supreme Court of Appeals, along with the state's brief (supplied in this case by the Virginia Attorney General in response to an order by the court below) and the opinion of the district judge denying relief.[1] However, appellant has attached to his brief, though not in the record, a copy of the habeas corpus petition filed by him in the Norfolk Corporation Court in 1968 attacking an earlier sentence for the same robbery here involved, and the court's order invalidating that sentence.

There appears to be no dispute as to the historical facts as hereinafter stated. On August 17, 1963, Brown, then seventeen years of age, was arrested in Norfolk and charged with attacking a bus driver, striking him in the head with a hatchet and robbing him.[2] On August 19, 1963, Brown was brought before the Juvenile and Domestic Relations Court (along with some other juveniles), on a petition charging him with robbery. It does not affirmatively appear from the juvenile court record that either of Brown's parents was present at any of the proceedings which followed but it is conceded that the court did not appoint a guardian ad litem to represent him. At the conclusion of proceedings on Au-

---

1. Brown v. Cox, 319 F.Supp. 999 (E.D. Va.1970).

2. The driver was frightfully and permanently maimed and injured beyond any hope of recovery. The district court stated: "On August 10, 1963, petitioner was 17 years of age. Accompanied by his 14 year old girl friend, they planned to rob a bus driver on the evening in question. The girl boarded the bus and petitioner followed. Petitioner concealed a hatchet in a paper bag and, when reaching in his pocket as if to pay his fare, proceeded to hit the bus driver with the hatchet, thus rendering permanent brain damage and making him incapable of performing any work for the balance of his life."

gust 19 the Juvenile Court entered the following order:

"Under these circumstances I find them [Brown and the other accused juveniles] within the purview of the Juvenile Court Law and refer them to the Probation Department for an investigation, to be made in Grand Jury form. Continued to September 3, 1963, for the purpose of making this investigation. To remain in Norfolk City jail in default of bond."

On September 3, 1963, another hearing was held in the Juvenile Court and at the conclusion it was ordered that Brown and the charges against him and other juveniles be transferred to the Corporation Court of the City of Norfolk for criminal proceedings. This transfer [3] was presumably under the authority of Virginia Code, § 16.1–176.

In October 1963 Brown was indicted for robbery in the Norfolk Corporation Court. He pleaded guilty and in January 1964 was sentenced by that court to life imprisonment.

In May 1968 Brown instituted habeas corpus proceedings in the Norfolk Corporation Court attacking his conviction and life sentence on the ground, *inter alia*, that in the proceedings in the Juvenile Court a guardian ad litem had not been appointed for him. The Corporation Court granted relief, holding that the sentence was null and void, presumably in light of Peyton v. French, 207 Va. 73, 147 S.E.2d 739 (1966), in which it was held that such a defect in juvenile proceedings leading to a transfer nullified the transfer and thereby deprived the criminal court of jurisdiction. However, the order of the Norfolk Corporation Court, invalidating the sentence, did not order Brown's release but directed that he be detained and confined in the city jail to await further orders of the court. Brown was then twenty-three years old.

Shortly thereafter Brown was again indicted in the Norfolk Corporation Court for the same 1963 robbery. In November 1968 he was tried before a jury, found guilty, and again sentenced to life imprisonment. He then sought review of his conviction by the Supreme Court of Appeals of Virginia but his Petition for Writ of Error was denied without opinion. He asserted there that the sentence was void in that constitutionally he could not be retried by the state as an adult consistent with the requirements of due process and equal protection. The denial of the writ of error came shortly after the decision in Pruitt v. Guerry, 210 Va. 268, 170 S.E.2d 1 (1969), which obviously rejected the same contentions Brown was then urging. In that case the court stated:

"No fewer than four times recently this court has held that a defendant who is charged with the commission of a crime when a juvenile and is not validly tried therefor before he reaches eighteen years of age, is no longer within the jurisdiction of the juvenile court but may be proceeded against as an adult. Such is the holding of many other courts, . . . ." 170 S.E.2d 3.

Continuing to press his claims, Brown commenced this habeas corpus proceeding in the district court in May 1970. Finding that state remedies had been exhausted, the district court held valid the conviction in the Norfolk Corporation Court and the life sentence Brown is now serving. We conclude that a proper determination of the validity or invalidity of that conviction and sentence will depend upon the outcome of further proceedings to be had on remand as hereinafter directed.

Brown is represented on this appeal by able and resourceful counsel appointed by this court. Counsel has filed a comprehensive brief and has argued orally at the bar of the court.

Preliminarily it seems desirable to call attention to certain provisions of the

---

3. In juvenile court parlance this type of proceeding is called variously a "transfer," a "certification," and a "waiver."

Virginia statutes pertaining to juveniles, the jurisdiction of juvenile and domestic

relations courts and prescribed procedures.[4] In his brief petitioner con-

4. All references are to the Code of Virginia 1950 (1960 Repl.Vol.).

§ 16.1–141.—When used in this chapter, unless the context otherwise requires;

(1) *"The court"* or the *"juvenile court"* means the juvenile and domestic relations court of each county or city;

(2) *"The judge"* means the judge . . . of the juvenile and domestic relations court of each county or city;

(3) *"Child"* or *"juvenile"* means a person less than eighteen years of age;

(4) *"Minor"* means a person eighteen years of age or older, but less than twenty-one years of age;

(5) *"Adult"* means a person twenty-one years of age or older; . . . .

§ 16.1–164. Information; investigation; petition; summons.—When the court receives reliable information that any child or minor is within the purview of this law or subject to the jurisdiction of the court hereunder, . . . the court shall require an investigation which may include the physical, mental and social conditions and personality of the child or minor and the facts and circumstances surrounding the violation of the law. The court may then proceed informally and make such adjustment as is practicable without a petition or may authorize a petition to be filed by any person, and if any such person does not file a petition a probation officer or a police officer shall file it; but nothing herein shall affect the right of any person to file a petition if he so desires. . . .

§ 16.1–172. Notice to parents or person or agency acting in place of parents.—In no case shall the hearing proceed until the parent or parents of the child, if residing within the State, or person or agency acting in place of parents in case the parents have theretofore been legally deprived of custody of the child, have been notified, unless the judge shall certify on his record that diligent efforts have been made to locate and notify the parent or parents without avail, or unless the court shall certify that no useful purpose would be served thereby because of the conditions set out in § 16.1–166.

§ 16.1–173. When guardian ad litem appointed.—When no person required to be notified under § 16.1–172 is present in court at the time of the hearing, the court shall, before proceeding with the hearing, appoint a probation officer or a discreet and competent attorney at law as guardian ad litem to represent the interests of the child or minor, and such guardian ad litem shall be present at the hearing.

§ 16.1–176. Transfer to other courts; presentment to grand jury; children under fourteen excepted.—(a) If a child fourteen years of age or over is charged with an offense which, if committed by an adult, could be punishable by confinement in the penitentiary the court after an investigation as prescribed in paragraph (b) of this section, and hearing thereon may, in its discretion, retain jurisdiction or certify such child for proper criminal proceedings to the appropriate court of record having criminal jurisdiction of such offenses if committed by an adult; provided, however, that in the event the juvenile court does not so certify a child fourteen years of age or over, charged with an offense which, if committed by an adult, would be punishable by death or confinement in the penitentiary for life or a period of twenty years or more, the Commonwealth's attorney of the city or county, if he deems it to the public interest, may present the case to the grand jury of the proper court of record, and provided further that if a child fourteen years of age or older who has previously been adjudged to come within the purview of the juvenile and domestic relations court law for committing an offense indicating a viciousness of character, or an offense which, if committed by an adult, could be punishable by confinement in the penitentiary and is subsequently charged with committing a felony, the Commonwealth's attorney of the city or county, if he deems it to be in the public interest, may, after a preliminary hearing in the juvenile and domestic relations court, present the case to the grand jury of the proper court of record. It shall be the duty of the Commonwealth's attorney to notify the juvenile and domestic relations court within three days after final adjudication if he deems action by the court of record necessary. Thereafter, the decision as to whether or not to present the case to the grand jury shall be in the sole discretion of the juvenile and domestic relations court. If the grand jury returns a true bill upon such indictment the jurisdiction of the juvenile court as to such case shall terminate. . . . The ages specified in this section refer

tends that he is entitled to his unconditional release for two basic reasons; the sentence under which he is imprisoned is void because the 1968 retrial in the Norfolk Corporation Court, at which sentence was imposed, was

I. In violation of his constitutional protection against double jeopardy; and

II. The 1968 retrial, without a valid juvenile transfer determination, did not cure the illegality in the original transfer proceeding and a further attempt by the State to now cure the illegality would be "meaningless and unjust."

We have been furnished with a copy of Brown's petition for a writ of habeas corpus filed in the Corporation Court of the City of Norfolk in June 1968, following his first conviction in 1964 on the robbery charge. It is interesting to note, from the statement of facts contained in said petition, that at the hearing on August 19, 1963, Brown and at least two other juveniles were charged with having robbed two bus drivers and that the investigating officer testified that the juveniles had admitted taking about $79 from the person of one driver, Mr. Ayers; that on the other robbery charge it was alleged that Brown and his codefendant had taken $40 from the person of the second bus driver, Mr. Talton; that Brown's mother and the mothers of the other juveniles were present at the August 19 hearing at which these matters were ordered continued to September 3, 1963, for investigation, at which time the two robbery charges were certified to the Norfolk Corporation Court for "proper" criminal "proceedings," and the codefendants

likewise were certified to said court for "criminal proceedings." It further appears from said state habeas petition that Brown was indicted with others on two "armed robbery" charges and a statutory burglary charge in October 1963; that he entered pleas of guilty; that he was tried by the court without a jury and found guilty of all three charges and on January 17, 1964, he was sentenced to a life term on each of the robbery charges and to a term of five years on the statutory burglary charge. It was in response to this state habeas petition that the Corporation Court set aside Brown's convictions and sentences as unlawful because he was not represented by a guardian ad litem before the juvenile court. At no place in this petition does he mention double jeopardy.

We have examined carefully the habeas petition filed with the district court below and we find therein no claim or allegation that Brown's right to constitutional protection against double jeopardy was violated. Principally, he bases his claim for relief upon alleged violation of due process rights under the Fourteenth Amendment. Understandably, the district court's opinion or memorandum order makes no reference whatever to double jeopardy but deals exclusively with due process questions.

Furthermore, we have examined Brown's petition for a writ of error filed in the Supreme Court of Appeals of Virginia in which he attacked his second conviction and sentence in the Norfolk Corporation Court. While the petition contains two casual references to double jeopardy the principal thrust of his claims and argument therein is based upon due process grounds.

to the age of the child or minor at the time of the alleged commission of the offense.

(b) In all cases under this section the court may, unless such information is otherwise available to it from a prior investigation and report to another court, require an investigation of the physical, mental and social condition and personality of the child or minor and the facts and circumstances sur-

rounding the violation of the law which is the cause of his being before the court. Such investigation need not include an examination of the child or minor by a physician or psychiatrist unless the court, in its discretion, so directs. If the court requiring the investigation is a juvenile court, such investigation may be made by the agency providing probation service under § 16.1–205; . . . .

In his brief filed with this court on appeal Brown argues at length the double jeopardy question which he seeks to present here. We have listened to the tape recording of the oral arguments at the bar of this court and we find it quite significant that neither counsel for Brown nor counsel for the Commonwealth of Virginia made even a passing reference to double jeopardy.

■ In light of the foregoing factual recital and assuming without deciding that Brown has exhausted his state remedies as to his double jeopardy claim, it is clear that no question of double jeopardy was presented to or considered by the district court. Consequently, we decline to consider as properly before this court the petitioner's claim of double jeopardy. *See* Young v. Boles, 343 F.2d 136, at pages 138–139 (4 Cir. 1965).

■ Turning our attention to the remaining questions and the contentions with respect thereto, we find that the new trial remedy afforded by Virginia is not determined on a case-by-case basis but has been consistently required whenever a denial of due process is found to have occurred in the juvenile court.[5] The district court below observed that Virginia has interpreted its own juvenile laws as applying procedural or due process requirements to the time of certification or transfer of the juvenile for proper criminal proceedings in the appropriate court of record, not to the time of the commission of the offense. With respect to appellant Brown, Virginia courts determined that he had been denied procedural due process in the juvenile court because he was not there represented by an attorney or a guardian ad litem as required by the Virginia statute; he was afforded the Virginia remedy, a new trial; all prior proceedings were held void and Brown was retried on new indictments.

In Kemplen v. State of Maryland, 428 F.2d 169 (4 Cir. 1970), we were concerned with a waiver of juvenile jurisdiction under a Maryland statute which permitted a juvenile court to waive its jurisdiction and thus permit a juvenile to be tried and sentenced as an adult. Kemplen, a juvenile 17 years of age, was arrested on a charge of larceny and malicious damage to property. The next day he appeared, without counsel, before the Juvenile Court of Harford County, Maryland. His parents were present. The juvenile court ordered its jurisdiction waived without making any specific findings of fact. Several months later Kemplen was tried as an adult by the Circuit Court of Harford County and, upon conviction, was sentenced to two years in prison. Because of this conviction and his prior record he was ordered to the Patuxent Institution by the trial court for psychological examination to determine whether he was "a defective delinquent," but due to the fact that he refused to cooperate in psychological testing at Patuxent he remained there without committal long past the expiration of his sentence. Requested habeas corpus relief was denied by the state courts and by the United States District Court for the District of Maryland. At the time of Kemplen's appeal to this court he had been released from custody and was 22 years of age.

Relying primarily on the teachings of Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), and In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), this court said in *Kemplen*:

" . . . However, *Kent* and *Gault* do make it unquestionably clear that juvenile court proceedings that affect a young person's substantial rights 'must measure up to the essentials of due process and fair treatment,' . . . in the same manner

---

5. *See* Pruitt v. Guerry, 210 Va. 268, 170 S.E.2d 1 (1969) ; Pruitt v. Peyton, 209 Va. 532, 165 S.E.2d 288 (1969) ; Gogley v. Peyton, 208 Va. 679, 160 S.E.2d 746 (1968) ; Gregory v. Peyton, 208 Va. 157, 156 S.E.2d 624 (1967) ; Peyton v. French, 207 Va. 73, 147 S.E.2d 739 (1966).

as must criminal proceedings affecting the substantial rights of adults."[6]

We held in *Kemplen* that by deciding the waiver issue the juvenile court determines whether the accused, if found guilty, will receive nonpunitive rehabilitation as a juvenile from the state's social service agencies or will be sentenced as an adult; nothing can be more critical to the accused than determining whether there will be a guilt determining process in an adult-type criminal trial; the waiver proceeding can result in dire consequences indeed for the guilty accused; if the juvenile court decides to keep jurisdiction, the juvenile can be detained only until he reaches majority; but if jurisdiction is waived to the adult court the accused may be incarcerated for much longer, depending upon the gravity of the offense, and, if the offense be a felony, lose certain of his rights of citizenship. In short, we held that a juvenile was entitled to counsel at the "waiver hearing"; that the juvenile, his parents and counsel must be given adequate notice of the nature of the proceeding, its date and the charges to be considered so that they might have a reasonable opportunity to prepare and present the juvenile's case as to waiver. In the instant case these very same rights are not only constitutionally guaranteed but are provided by Virginia statutes.[7] We said in *Kemplen*, on petition for rehearing:

> "Without delimiting the range of remedies left open by Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), we think the proper remedy for this petitioner, on the facts of this case, will be the reconstruction in the Maryland courts, or failing that in the United States District Court, of the *circumstances* bearing on the waiver question and a determination *nunc pro tunc* or what the juvenile court judge would probably

have done in light of all the information then available that might reasonably have been proffered by competent counsel." 428 F.2d 169 at 178.

We added that if the court found that waiver was inappropriate Kemplen's conviction should be vacated and he should be released because, being over the age of twenty-one, Kemplen could not be tried as a juvenile; but if the court found the waiver was appropriate when made, despite lack of counsel and notice, the adult conviction should stand and relief should be denied.

Counsel for the appellant argues vigorously, not only in his brief but orally, that the only proper remedy or relief in this case is to order appellant's immediate release from custody. Briefly, it is argued that behind the remedy in both *Kent* and *Kemplen* is the idea that if the transfer order is determined in retrospect to have been a proper and appropriate disposition of the juvenile the criminal conviction can stand; in other words, the fatal flaw, in that event, will in theory have been cured by redoing years later, with a grown man, what supposedly should have been done or would have been done with a child if proper procedure had been followed; that it can hardly be a genuine remedy for the state's illegality in depriving a child of the benefit of the juvenile laws, in view of the unique nature of those laws and of their purposes; that considering Brown's lifelong liberty at stake the state has had ample opportunities to rectify a fundamental wrong and that in view of the never-to-be-recalled nature of the juvenile process taken from petitioner by the state's illegal procedure, he is entitled to his outright discharge; that the difficulties encountered in a reconstruction process are not merely the difficulties encountered in holding hearings based on long ago events; such a procedure is artificial, is meaningless

---

6. Kemplen v. State of Maryland, 428 F.2d 169, 173 (4 Cir. 1970).

7. *Ante* note 4, Va.Code § 16.1–172 and 16.1–173.

and involves almost certain unfairness to the individual involved.

■■ The instant case may be distinguished from Kemplen v. State of Maryland, *supra*, because of some apparent factual differences but we think, on principle, the decision in *Kemplen* should control our decision here. We have hereinbefore pointed to the Virginia remedy provided in such cases, *i.e.*, that the prisoner be retried on new indictments after he has reached his majority. The federal remedy, as fashioned by this court, holds the prior proceedings not void but voidable, depending on the results of a reconstructed hearing as to the waiver or transfer proceedings.

We, of course, would prefer that the Virginia courts would provide for a hearing and endeavor to reconstruct the circumstances bearing on the waiver question and determine *nunc pro tunc* what the juvenile court judge would probably have done in light of all the information then available that might reasonably have been proffered by competent counsel or a guardian ad litem to persuade the juvenile court judge to retain, rather than to waive, jurisdiction. However, it seems clear that the Virginia courts have, in effect, refused to adopt the federal remedy and have taken the firm position that they have no authority or procedure which would permit them to hold a reconstruction hearing to determine whether the original juvenile certification or transfer was proper.

Therefore, we remand this case to the district court for the purpose of holding a hearing such as envisioned in Kemplen v. State of Maryland, *supra*. If the court finds that waiver of jurisdiction by the juvenile court was inappropriate Brown's conviction must be vacated. If the court shall find that the waiver or transfer order was appropriate when made by the juvenile court Brown's adult conviction will stand and relief will be denied.

Reversed and remanded.