JUSTICE KINSER,
with whom JUSTICE LACY joins, dissenting.
Because I believe that David Allen Moore has defaulted the alleged error under Rules 5:17(c) and 5:25, I would affirm his convictions.
Before discussing my reasons for this conclusion, it is important to note, as does the majority, that the instant case comes to us in an entirely different procedural posture than did the case of Baker v. Commonwealth, 258 Va. 1, 516 S.E.2d 219 (1999) (per curiam). *442 Although Moore alleges the same error as the one addressed in Baker, namely the failure to give notice of the initiation of juvenile proceedings to the juvenile’s father in accordance with former Code § 16.1-263 (1994)[1] and present Code § 16.1-264 (1994),[2] Moore failed to raise an objection with regard to the issue either before the juvenile and domestic relations district court (juvenile court) or the circuit court. To the contrary, the juvenile court judge stated in her notes, which are part of the record in this appeal, that neither party presented any question regarding the sufficiency of the notice required under former Code § 16.1-263 and present Code § 16.1-264. The juvenile court then found that notice as prescribed in those statutes had been given. Likewise, Moore did not assign error to this alleged defect in his petition for appeal to the Court of Appeals. Instead, he raised the question whether the circuit court lacked jurisdiction to try him as an adult because the juvenile court did not comply with the notice provisions of former Code § 16.1-263 and present Code § 16.1-264 for the first time before this Court.[3]
In contrast to Moore, the defendant in Baker preserved his objection to the error by filing a motion to dismiss before he was indicted. Baker also timely raised the issue on appeal. Thus, we did not have to determine in Baker whether the error was one that deprived the juvenile court of its subject matter jurisdiction and thus could be raised at any time.[4] Consequently, this Court’s decision in Baker is not dispositive of the present question whether Moore has defaulted the alleged error.
In analyzing this question, I begin with a series of this Court’s decisions in which we permitted defendants, in the context of habeas corpus proceedings, to collaterally attack their prior convictions because certain mandatory procedures were not followed in their juvenile court proceedings. In Peyton v. French, 207 Va. 73, 147 S.E.2d 739 (1966), the juvenile court “certified” felony charges against the juvenile to the circuit court so the juvenile could be tried as an adult, but the juvenile court did so without notice to the juve *443 nile or his parents, without the presence of even one of his parents, without the appointment of a guardian ad litem for the juvenile, and without a hearing. Id. at 75, 147 S.E.2d at 740. At that time, former Code § 16.1-172 (1960) provided that “[i]n no case shall the hearing proceed until the parent or parents of the child, if residing within the State, . . . have been notified of such.”[5] If none of the persons required to be notified of the hearing were present in court at the time of the hearing, former Code § 16.1-173 (1960) required the juvenile court to appoint a guardian ad litem to represent the interests of the juvenile. That appointment had to occur before the hearing could proceed, and the guardian ad litem had to be present at the hearing. Id. at 76, 147 S.E.2d at 741. This Court said the complete failure to comply with the statutory requirements was a violation of due process and concluded that compliance with those provisions was necessary “before criminal jurisdiction in a proper court of record comes into being.” Id. at 79, 147 S.E.2d at 743.
In Gregory v. Peyton, 208 Va. 157, 156 S.E.2d 624 (1967), we again confronted the failure to appoint a guardian ad litem for the juvenile when neither of his parents was present at the hearing. Id. at 158, 156 S.E.2d 624. There, we reaffirmed our holding in French that the failure “to comply with the applicable provisions of the [jjuvenile . . . [l]aw rendered the subsequent proceeding in the criminal court void.” Id. at 159-60, 156 S.E.2d at 625. This Court addressed the same issue in Gogley v. Peyton, 208 Va. 679, 160 S.E.2d 746 (1968), where we applied our decision in French retrospectively so as to void the juvenile’s convictions. 208 Va. at 680, 160 S.E.2d at 747. Again, in Pruitt v. Peyton, 209 Va. 532, 165 S.E.2d 288 (1969), we held that the failure to appoint a guardian ad litem for a juvenile after neither of his parents appeared at his juvenile court hearing was “jurisdictional,” and consequently rendered the juvenile’s convictions void. Id. at 535, 165 S.E.2d at 290.
While the errors in the above cases were raised by the respective defendants in petitions for writs of habeas corpus, in Jones v. Commonwealth, 213 Va. 425, 192 S.E.2d 775 (1972), which was a direct appeal of the defendant’s conviction as a recidivist, we also permitted Jones to collaterally attack his underlying juvenile conviction. We did so because the official records of the juvenile court were silent as to whether either of Jones’ parents had been notified of his juvenile *444 court proceeding, whether either was present at the hearing, and whether a guardian ad litem had been appointed to represent him at the juvenile court proceeding. Id. at 427, 192 S.E.2d at 777. Again relying on our decision in French, we held that the failure to give notice to Jones’ parents and to appoint a guardian ad litem in the absence of a parent deprived the trial court of jurisdiction. Id. at 428, 192 S.E.2d at 777.
However, this Court has not always held that the failure to comply with mandatory provisions regarding juvenile proceedings deprived the juvenile court of its jurisdiction. For example, in Turner v. Commonwealth, 216 Va. 666, 222 S.E.2d 517 (1976), we decided that a mandatory requirement that “[njotice in writing of the time, place and purpose of [a transfer] hearing” be provided “to the child and his parents ... or attorney” was not jurisdictional. Id. at 667, 222 S.E.2d at 518. In that case, the juvenile, his father, and his attorney all received oral notice of the hearing.[6] Id. at 668, 222 S.E.2d at 519. We concluded that the juvenile court’s failure to comply with the requirement of written notice was “a mere procedural defect,” which could not be challenged as error if not timely raised. Id. at 669-70, 222 S.E.2d at 520.
More recently, this Court decided Jackson v. Commonwealth, 255 Va. 625, 499 S.E.2d 538 (1998), cert. denied, 525 U.S. 1067 (1999). There, in the context of determining whether certain transfer proceedings were conducted appropriately, we held that statutory language providing that “[t]he circuit court shall, within a reasonable time after receipt of the case from the juvenile court (i) examine all . . . papers, reports and orders . . .,” established a “jurisdictional” requirement that such a transfer review take place, but merely a “procedural” rule for the time of review. Id. at 642-43, 499 S.E.2d at 549. (Emphasis added.)
Upon reviewing the decisions in French and its progeny, it becomes evident that this Court addressed “jurisdictional” defects in those cases. However, we never clearly specified that we were considering subject matter jurisdictional defects. Nevertheless, the question of the juvenile court’s subject matter jurisdiction was implicated because we allowed the defendants in French, Gregory, Gogley, Pruitt, and Jones to collaterally attack their juvenile convictions. In those decisions, this Court recognized that the statutes at issue *445 imposed mandatory requirements regarding juvenile proceedings and that those requirements were coupled with limiting language that prohibited the court from going forward with a hearing until the requirements were fulfilled. Therefore, the Court held that compliance with those mandatory requirements was a prerequisite for the juvenile court’s exercise of its subject matter jurisdiction.
I believe that there were two provisions in effect when the juvenile proceedings at issue in French and its progeny were conducted that rendered the defects in those cases “jurisdictional.” The first one was the requirement that “[i]n no case shall the hearing proceed until the parent or parents of the child . . . have been notified . . . .”[7] Former Code § 16.1-172 (I960).[8] (Emphasis added). The second provision was former Code § 16.1-173 (1960), requiring that when no person required to be notified under former Code § 16.1-172 (1960) was present in court for the hearing, the “court shall, before proceeding with the hearing, appoint a . . . guardian ad litem to represent the interests of the child.”[9] (Emphasis added).[10]
In 1973, after this Court’s decisions in French and its progeny, and before the commission of the crimes at issue in Turner, the General Assembly enacted former Code § 16.1-176.2 (1973), now Code § 16.1-270 (1999). That section allows a juvenile, prior to a transfer hearing and with the consent of counsel, to waive the jurisdiction of the juvenile court and have the case transferred to the appropriate circuit court. That waiver provision played a role in this Court’s decision in Turner, where we held that the requirement of “written” notice was merely procedural. 216 Va. at 669, 222 S.E.2d at 520. In *446 deciding whether Moore can now challenge his convictions because of the alleged failure to summons his father after the petition was filed against Moore, I also find that waiver provision significant because it allows a juvenile, with the consent of his attorney, to forego virtually all the safeguards afforded to the juvenile before a case is transferred to the circuit court.
Even more compelling is the fact that in 1977, the General Assembly repealed and reorganized the Code provisions pertaining to juveniles, and in doing so, deleted the requirement that “[i]n no case shall the hearing proceed” unless the juvenile’s parent or parents are notified. Former Code § 16.1-172 (I960).[11] Similarly, in 1968, the General Assembly amended former Code § 16.1-173 (1960), removing the requirement that the “court shall, before proceeding with the hearing,” appoint a guardian ad litem when no person required to be summonsed is present at the hearing.[12] Thus, the statutory provisions at issue in the present case no longer contained limiting language, such as that found in former Code §§ 16.1-172 and -173 (1960), that specifically prohibited the juvenile court from proceeding in the absence of notice to both parents. Cf. Jamborsky v. Baskins, 247 Va. 506, 511 n.*, 442 S.E.2d 636, 639 n.* (1994) (giving example of limiting prohibitory language). Instead, former Code § 16.1-263 and present Code § 16.1-264 merely required that a summons be issued to the juvenile’s parents after the filing of a petition against the juvenile. Furthermore, a juvenile like Moore can waive the jurisdiction of the juvenile court and virtually all its attendant safeguards.
I believe that the majority incorrectly equates statutory provisions that are “mandatory” with those that are prerequisites to a juvenile court’s exercise of its subject matter jurisdiction. See, e.g., the majority’s quotation in the present case from Dennis Moore v. Commonwealth, 259 Va. 405, 527 S.E.2d 415 (2000) (this day decided). As already noted, the error in Turner was “a mere procedural defect,” 216 Va. at 669, 222 S.E.2d at 520, although the notice requirement at issue there used the mandatory term “shall.” Former Code § 16.1-176(a)(3) (1974). The mandatory nature of a requirement, standing alone, does not always make that requirement jurisdictional.
*447 The majority concludes that the notice provision at issue in this case is mandatory, and in its view, therefore jurisdictional, because of “this Court’s unswerving adherence to the nature of” the parental notice requirement with regard to juvenile proceedings. However, in doing so, the majority ignores the statutory changes, discussed above, deleting the language that prohibited the juvenile court from proceeding with a hearing until certain requirements were fulfilled. Furthermore, this Court has not, in the context of a collateral attack on a juvenile conviction, addressed the parental notice requirement at issue today since the 1977 amendments, much less “unswerving[ly] adhere[d]” to a conclusion that the present requirement is jurisdictional.
Since the juvenile court is a creature of statute, the General Assembly can modify any prerequisites for the juvenile court’s exercise of its subject matter jurisdiction. See Burke v. Commonwealth, 29 Va. App. 183, 188, 510 S.E.2d 743, 746 (1999) (holding that when subject matter jurisdiction is statutorily created, General Assembly can alter rules governing judicial exercise of that jurisdiction). Thus, I conclude that what was deemed a “jurisdictional” defect in the French case and its progeny is no longer such because of the intervening changes in the language of the relevant statutory provisions.[13] Therefore, Moore cannot now raise the failure to summons his father as a basis for voiding his convictions. See Humphreys v. Commonwealth, 186 Va. 765, 772, 43 S.E.2d 890, 894 (1947) (court’s subject matter jurisdiction cannot be waived); Morrison v. Bestler, 239 Va. 166, 169, 387 S.E.2d 753, 755 (1990) (only type of jurisdiction which cannot be waived is subject matter jurisdiction). Accordingly, under Rules 5:17(c) and 5:25, Moore has defaulted his objection to the alleged error.
For these reasons, I respectfully dissent and would affirm Moore’s convictions.[14]

 This section was amended by the General Assembly in 1999 to require the summons of only one of a juvenile’s parents, while the former section required notice to both parents.

 Code § 16.1-264 remains the same as it was in 1994.

 Moore has not asked that his failure to object to the lack of notice be considered under the “ends of justice” exception to the requirements of Rule 5:25.

 A court’s subject matter jurisdiction is the only type of jurisdiction that cannot be waived. Morrison v. Bestler, 239 Va. 166, 169, 387 S.E.2d 753, 755 (1990). Thus, an error, other than one addressing a court’s lack of subject matter jurisdiction, is deemed waived if not timely raised. See Rules 5:17(c) and 5:25.

 Neither French nor any of its progeny presented an issue concerning the non-residency of a juvenile’s parent. Thus, that portion of the statute is not relevant to my analysis.

 The juvenile’s parents and attorney were present at the hearing, but it is not clear if the mother had previously been notified of the hearing.

 That provision also incorporated the requirement that summons issue to “all proper or necessary parties” upon the issuance of a petition against a juvenile, former Code § 16.1-166 (1960), which now appears in different form in Code § 16.1-263 (1999).

 At the time of Pruitt’s juvenile proceedings, this language was codified at former Code § 16-172.38 (1952), and at the time of Jones’ juvenile proceedings, the pertinent provision, former Code § 63-273 (R.P. 1948), provided that “[ijn no case shall the trial proceed until the parents or parent of such child . . . have been duly notified . . . .” Jones, 213 Va. at 427, 192 S.E.2d at 777.

 At the time of Pruitt’s juvenile proceedings, former Code § 16-172.39 (1952) provided for the appointment of a guardian ad litem when those persons to whom notice needed to be given as prescribed in former Code § 16-172.38 (1952) were not present. At the time of the juvenile proceedings involving Jones, former Code §§ 63-269 and -272 (R.P. 1948) required that the juvenile’s parents be summonsed, and if at least one of them did not appear, that a guardian ad litem be appointed for the juvenile.

 In some of the French line of cases, the failure to comply with only one provision rendered the convictions void, while in some cases, there was a failure to appoint a guardian ad litem as well as a failure in the required notice.

 That section was amended between 1960 and 1977 but retained the quoted language until 1977.

 In its place, the legislature enacted language requiring that the juvenile be advised of his or her right to counsel, which is advice that must be given whether a parent is present or not. Former Code § 16.1-173 (1968).

 The decision of the Supreme Court of the United States in In re Gault, 387 U.S. 1 (1967), does not alter my analysis. That case, decided after this Court had decided French, stressed the content and timeliness of the constitutionally required notice.

 Because I conclude that Moore had defaulted his objection to the alleged error, I need not address Code § 16.1-269.6(E) (1994).